**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

KIRK SAINTCALLE,

      Petitioner,

      v.

JEFFREY UTTECHT,

      Respondent,

Case No. C15-0156-BJR-MAT

ORDER ADOPTING REPORT AND
RECOMMENDATION.

## I.      INTRODUCTION

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Mary Alice Theiler (ECF No. 31), which recommends that Petitioner's habeas petition (ECF No. 23) be DENIED, a certificate of appealability ("COA") be GRANTED, and Petitioner's action be dismissed with prejudice. After reviewing the R&R, Petitioner's Objections, Respondent's Response to Petitioner's Objections, and the record, the Court ADOPTS Magistrate Judge Theiler's R&R.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Kirk Saintcalle ("Petitioner") filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 23.) Petitioner, an African-American man, challenges his state court convictions on the grounds that, under *Batson v. Kentucky*, 476 U.S. 79 (1986), the peremptory strike of the only African-American venire member violated his Fourteenth Amendment right to equal protection. *See State v. Saintcalle*, 178 Wash. 2d 34, 35 (2013).

On October 16, 2009, Petitioner was sentenced to 579 months in prison after being

1

convicted of one count of first degree felony murder and three counts of second degree assault. (ECF No. 23.) "[He] was accused of entering an apartment in the city of Auburn with two companions, holding three people at gunpoint, and shooting and killing Anthony Johnson." *Saintcalle*, 178 Wash. 2d at 36. On direct appeal, the Washington Supreme Court provided the following summary of facts relevant to Petitioner's *Batson* claim:

¶5 During jury selection at Saintcalle's trial, the prosecution used a peremptory challenge to strike the only black juror in the venire, juror 34, Anna Tolson. This challenge came after the prosecution questioned juror 34 extensively during voir dire—far more extensively than any other juror. Indeed, most of the prosecution's interactions with jurors were quite brief, usually consisting of only a few short questions, but not the interaction with juror 34. The State began questioning juror 34 after another juror made a comment about race:

[JUROR 72]: I feel there are some areas of unfairness in our system. I am aware, for example, that a jury of their peers [sic], yet as you look around this panel, all of the faces are white.

[JUROR 34]: No, not quite.

(Laughter.)

[PROSECUTOR]: You know what, you kind of bring a very important topic to light. If you were seated here in this chair and you looked out at this panel, would you have any concern about whether or not people are going to be able to relate to you or listen to you or feel for you? Juror number—What is your number? Juror number 34, I am going to ask you a little bit about your background. You work at the YMCA?

[JUROR 34]: I work in a middle school.

[PROSECUTOR]: So tell me how that works. So you are a counselor?

[PROSECUTOR]: Which means you see a whole lot.

[JUROR 34]: Yes.

[PROSECUTOR]: And where do you work? What school do you work in?

[JUROR 34]: Do I really need to say that?

[PROSECUTOR]: How about you just tell me the city. Is it an inner city school?

[JUROR 34]: Yes.

[PROSECUTOR]: You see a whole lot?

[JUROR 34]: Yes.

[PROSECUTOR]: I am interested to hear from you—I mean, do you have impressions about the criminal justice system?

[JUROR 34]: Yes.

[PROSECUTOR]: You are not going to hurt my feelings if you talk about them a little bit. What are your thoughts?

[JUROR 34]: Gosh, I feel like I am on the spot here.

But being a person of color, I have a lot of thoughts about the criminal system. I see—I have seen firsthand—and a couple people have already mentioned that if you have money, you tend to seem to work the system and get over. And regardless if you are innocent or guilty, if you want to be innocent, your money says you are innocent.

And a person of color, even if you do have an affluent lawyer who has the background, the finance to get you off, because you are a person of color, a lot of times you are not going to get that same kind of opportunities.

And especially with this person being a person of color and being a male, I am concerned about, you know, the different stereotypes. Even if we haven't heard anything about this case, we watch the news every night. We see how people of color, especially young men, are portrayed in the news. We never hardly ever see anyone of color doing something positive, doing something good in their community.

So kind of like what the person behind me is saying, since most of the people in this room are white, I am wondering what's running through their mind as they see this young man sitting up here.

[PROSECUTOR]: Right. How about for you, do you think—I mean, you've got a whole lot that you are feeling as you sit here and that

3

you are going to be asked to sit in judgment of somebody. How do you think you are going to be able to handle that?

[JUROR 34]: I think number one, because I am a Christian, I know I can listen to the facts and, you know, follow the judge's instruction. But also it's kind of hard, and I haven't mentioned this before because none of those questions have come up for me to answer, but I lost a friend two weeks ago to a murder, so it's kind of difficult sitting here. Even though I don't know the facts of this particular case, and I would like to think that I can be fair because I am a Christian, I did lose someone two weeks ago.

[PROSECUTOR]: Was that in Seattle?

[JUROR 34]: Yes.

[PROSECUTOR]: Was that [the] Tyrone case?

[JUROR 34]: Yes.

Report of Proceedings (RP) (Mar. 9, 2009) at 65–68. After a stretch break, the prosecutor resumed questioning juror 34:

[PROSECUTOR]: Juror number 34, I am going to move on to the group, but I wanted to close the loop with you. You have a lot that is going through your mind currently both that would give you a lot of empathy for someone who is charged with a crime and also empathy for someone who may be a victim of a crime. In that way, you may be representative of the perfect juror.

At the same time, we don't put people in a position where it's going to cause them a lot of emotional pain. At this point do you think you could sit in this case and listen to the facts and make a decision based solely on the evidence presented in trial here and be fair to both sides?

[JUROR 34]: I'd like to think that I could be, but kind of what you just mentioned just with the freshness and the rawness of the death of a friend, I am wondering if that would kind of go through my mind. I like to think that I am fair and can listen, be impartial, but I don't know. I have never been on a murder trial and have just lost a friend two weeks prior to a murder.

[PROSECUTOR]: What I am going to do, I am going to ask questions. I am going to kind of move on to the rest of the group so that you have time to think, and then we'll come back and ask you

4

maybe tomorrow to make your final decision about whether or not you think you can be fair. I am sorry for your loss.

*Id.* at 69–70. The next day, a different deputy prosecuting attorney followed up with juror 34:

> [PROSECUTOR]: Go back to [a] couple [of] people juror number 34 sorry [to] focus on you again after yesterday but I just want to try and go back [and] touch base with you. I know[ ] you mentioned yesterday that you had some recent events in your life that may make it difficult for you to serve as jurors [sic] in [this case]. Have you done anymore thinking about that? How are you feeling today?
>
> [JUROR 34]: Yes. I thought about it last night as well as this morning. And, you know, my thought is I don't want to be a part of this jury because of the situations, and the circumstances that I just went through. But I'm thinking if ever I was put in a situation where I needed twelve people who could be honest and look through all the facts or I guess I'm saying who could be like me I would want me. So sometimes you have to do things that you don't want to do.
>
> [PROSECUTOR]: I guess my only concern is do you feel like maybe some of the emotions that dredge up could cloud your judgment at all on either side. Either you know against the defendant, against the State or I'm just concerned about that particular issue?
>
> [Court inquires whether juror 34 would like to answer the question in private, but juror 34 declines.]
>
> [PROSECUTOR]: So is that something you can set aside or worried at all about the emotions kind of clouding in? I mean, it's just so new in terms of your life?
>
> [JUROR 34]: I mean, I have never been in this situation where I have lost someone. You just went to the funeral. He is young. Only 24. And to be called to jury duty to perhaps be on a jury of a murder suspect. I don't know how I'm going to react. You know, I don't know. I'm—I'm not an emotional person, but I'm thinking as we go through it, and I hear the testimony, and I see the pictures, I don't know. I mean, I'm just being honest. I don't know how I'm going to feel.

RP (Mar. 10, 2009) at 41–43.

¶ 6 After this exchange, the prosecution challenged juror 34 for cause. The judge denied the challenge, and the prosecution announced its intent to exercise a peremptory strike. At that point, Saintcalle raised a *Batson* challenge.

¶ 7 As required by *Batson*, the judge first found that Saintcalle had made a prima facie showing of purposeful discrimination. Next, the prosecution presented race-neutral reasons for striking juror 34: the reasons were (1) juror 34's "inattention" during voir dire and (2) the recent death of juror 34's friend. Id. at 101–02. The prosecutor claimed to have spent "a lot of time watching juror 34" and asserted that juror 34 was "very checked out." *Id*. at 101.

¶ 8 The judge denied the *Batson* challenge, stating on the record that he accepted the recent death of juror 34's friend as a proper race-neutral reason for the strike. Near the end of jury selection, the prosecution peremptorily struck juror 34, excusing her from the jury.

¶ 9 The prosecution also attempted to exercise a peremptory against the sole Mexican–American juror in the venire, juror 10, but the judge sustained Saintcalle's *Batson* challenge to that strike, rejecting each of the prosecutor's proffered reasons as pretextual. *Id*. at 119–20.

¶ 10 After Saintcalle was convicted, he appealed, alleging that the peremptory strike of juror 34 (Ms. Tolson) violated the Fourteenth Amendment's guaranty of equal protection. The Court of Appeals rejected his argument finding there was no purposeful discrimination and accepting the State's race-neutral explanation. *State v. Saintcalle*, noted at 162 Wash.App. 1028, 2011 WL 2520000 (2011). We granted review only on the *Batson* issue. *State v. Saintcalle*, 172 Wash. 2d 1020, 268 P.3d 224 (2011).

*Saintcalle*, 178 Wash. 2d at 36-41 (alteration in original).

The Washington Supreme Court affirmed Petitioner's conviction, stating that "the trial court's finding that there was no purposeful discrimination here [was] not clearly erroneous." *Id.* at 35. The court argued that *Batson* protections need to be strengthened, but it ultimately found that *Batson* was not violated, reasoning:

Ms. Tolson said she might have trouble sitting on the jury of a murder trial because someone she knew had recently been murdered.

. . .

In light of Ms. Tolson's statements throughout voir dire, we defer to the trial court's factual finding that the prosecutor was justified in believing there was a realistic

6

possibility that she might have been "lost" as a juror before the end of the case. The record does not compel a contrary conclusion. The trial court observed the juror and agreed that she was having difficulties. Losing jurors during a lengthy trial is always a possibility, and justice is not served when a mistrial is declared or a juror is unable to view and process the evidence. Here, it was entirely reasonable for the court to conclude that the prosecutor's concerns were legitimate and race-neutral, and there was no clear error. We affirm the trial court's finding that there was no purposeful discrimination.

¶ 48 We do, however, acknowledge that Ms. Tolson was questioned far more than any other juror, perhaps in part because she was black. This conclusion is supported by a statistical analysis of the prosecution's voir dire that appears in Appendix A, attached to this opinion. [footnote omitted] These statistics are rather striking, and in general, disparate questioning of minority jurors can provide evidence of discriminatory purpose because it can suggest that an attorney is "fishing" for a race-neutral reason to exercise a strike. *See Miller-El*, 545 U.S. at 241, 125 S. Ct. 2317; *Reed v. Quarterman*, 555 F.3d 364, 379 (5th Cir. 2009). However, disparate questioning does not itself prove purposeful discrimination. In some cases, there may be good reasons to question minority jurors more than nonminority jurors. Here, for example, the prosecutor began by eliciting Ms. Tolson's views on race in the criminal justice system and later spoke with her regarding the recent death of her friend. These were legitimate topics to explore. [footnote omitted] We defer to the trial court that the disparate questioning in this case, while it may have been motivated in part by race, did not necessarily amount to purposeful discrimination.

¶ 49 We also acknowledge that the prosecution attempted to strike the only Mexican-American juror in the venire, juror 10. RP (Mar. 10, 2009) at 119-20. And while it is true that a court's finding of discrimination against one juror is evidence of discrimination against others, it does not follow that one *Batson* violation necessarily implies another. *Snyder*, 552 U.S. at 478, 128 S. Ct. 1203.

¶ 50 Under *Batson*, we defer to the trial court's ruling.

*Id*. at 56-57. The Washington Supreme Court's decision included three concurrences and one dissenting opinion, in which Justice Chambers stated that he was "not convinced that Kirk Saintcalle received a fair trial before a truly representative jury." *Id*. at 119.

Petitioner filed his amended petition for writ of habeas corpus on June 23, 2017. (ECF No. 23.) On October 12, 2017 Magistrate Judge Theiler issued the instant R&R recommending that this Court deny Petitioner's habeas petition, grant Petitioner a COA, and dismiss Petitioner's action with prejudice. (ECF No. 31.) Petitioner filed timely objections, and Respondent filed a timely

response to Petitioner's objections.  (ECF Nos. 32, 33.)

### III.    STANDARDS OF REVIEW

**A.    Report and Recommendation**

When a party objects to an R&R, the district court must review *de novo* those portions of the R&R to which objection is made.  Fed. R. Civ. P. 72(b)(3); *see Communications Capital Group LTD. v. Tabb Assocs.*, No. 89-15043, 1990 WL 90311 at *3 (9th Cir. June 27, 1990) (citing *United States v. Raddatz*, 447 U.S. 667, 675 (1980); *North Amer. Watch v. Princess Ermine Jewels,* 786 F.2d 1447 (9th Cir.1986)).  The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge.  28 U.S.C. § 636 (b)(1)(C); *see Communications Capital Group LTD. v. Tabb Assocs.*, No. 89-15043, 1990 WL 90311 at *3 (9th Cir. June 27, 1990) (citing *United States v. Raddatz*, 447 U.S. 667, 675 (1980); *North Amer. Watch v. Princess Ermine Jewels,* 786 F.2d 1447 (9th Cir.1986)).

**B.    Habeas Corpus Petition**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court," *Harrington v. Richter*, 562 U.S. 86 (2011), "unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1)-(2).  For the purposes of the AEDPA, clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision," *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003), and includes only the Supreme Court's holdings, not its dicta, *id.* (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)

(Justice O'Connor's opinion)).

The AEDPA creates a standard that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). While it does not "complete[ly] bar federal-court relitigation of claims already rejected in state proceedings," *Harrington*, 562 U.S. at 102 (citing *Felker v. Turpin*, 518 U.S. 651, 644 (1996)), it limits relief to those cases where "the state court's ruling […] was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *id.* at 103. The AEDPA's high standard "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J. concurring)).

When considering a petition for habeas corpus brought pursuant to 28 U.S.C. § 2254(d), the federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). The federal court must also give the "benefit of the doubt" to state court decisions, and the burden of proof lies with the petitioner. *Id.* at 181 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam) (citation and internal quotation marks omitted)). "When more than one state court has adjudicated a claim, [the federal court] analyze[s] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

To grant a writ of habeas corpus under 28 U.S.C. § 2254(d)(1), the state court's decision must meet either the requirements of the AEDPA's "contrary to" clause or the requirements of its "unreasonable application" clause.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of

9

law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. at 412–13 (Justice O'Connor's opinion). In its analysis, "a habeas court must determine "whether it is possible fairminded jurists could disagree that [the state court's] arguments or theories are inconsistent with [clearly established federal law]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, to qualify as an "unreasonable application," the state court's application of clearly established law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003) (citing *Williams v. Taylor*, 529 U.S. at 409 (Justice O'Connor's opinion)).

Separately, a habeas court may grant the writ under 28 U.S.C. § 2254(d)(2) if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A habeas court may not "substitute[ ] its evaluation of the record for that of the state trial court," nor "use a set of debatable inferences to set aside the conclusion reached by the state court." *Rice v. Collins*, 546 U.S. 333, 337-38, 342 (2006). In the *Batson* context, to grant relief under 28 U.S.C. § 2254(d)(2) a court must demonstrate that the trial court acted unreasonably when it credited the prosecutor's race-neutral explanation. *See id.* at 338. "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) (citing 28 U.S.C. § 2254(d)(2)).

Finally, "in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(e)(1) requires "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2554(e)(1)).

Sections 2554(d)(2) and 2554(e)(1) of the AEDPA have at times been read together, requiring federal habeas courts to "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)); *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); *Williams v. Taylor*, 529 U.S. at 399 (2000) (Justice O'Connor's opinion)) ("Where 28 U.S.C. § 2254 applies, … [f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."); *Hernandez v. New York*, 500 U.S. 352, 366 (1991) (plurality opinion).

However, the Supreme Court and the Ninth Circuit have questioned the relationship between (e)(1) and (d)(2).  In *Wood v. Allen*, the Supreme Court granted certiorari to resolve "whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." 558 U.S. 290, 299 (2010).  The Supreme Court noted that the question "has divided the Courts of Appeals":

> *See, e.g.*, … *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), *cert. denied*, 543 U.S. 1038 (2004) (where a habeas petitioner challenges state-court factual findings "based entirely on the state record," the federal court reviews those findings for reasonableness only under § 2254(d)(2), but where a petitioner

challenges such findings based in part on evidence that is extrinsic to the state-court record, § 2254(e)(1) applies); *Lambert v. Blackwell*, 387 F.3d 210, 235 (3rd Cir. 2004) ("§ 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in the state-court proceeding,' while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record"); *Trussell v. Bowersox*, 447 F.3d 588, 591 (8th Cir. 2006) (federal habeas relief is available only "if the state court made 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U.S.C. § 2254(d)(2), which requires clear and convincing evidence that the state court's presumptively correct factual finding lacks evidentiary support"), *cert. denied*, 549 U.S. 1034 (2006); *Ben–Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008) (§ 2254(d)(2) can be satisfied by showing, under § 2254(e)(1), that a state-court decision "rests upon a determination of fact that lies against the clear weight of the evidence" because such a decision "is, by definition, a decision so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable" (internal quotation marks omitted)).

*Id.* at 299 n.1.

Ultimately, the Supreme Court determined that "the reasonableness of the state court's factual determination in [*Wood v. Allen*] [did] not turn on any interpretative difference regarding the relationship between [the] provisions," declined to resolve the issue, and assumed "for the sake of argument" that § 2254(e)(1) did not apply. 558 U.S. 290, 300 (2010). In 2014, the Ninth Circuit recognized that this question remains unsolved. *Murray v. Schriro*, 745 F.3d 984, 1001 (9th Cir. 2014) ("We believe any tension between [*Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004)] and our cases or between *Taylor* and limited statements by the Supreme Court will have to be resolved by our court en banc, or by the Supreme Court."). While the facts of this case approach the undetermined space between the two standards, the Court ultimately need not choose between them because it holds that the state court ruling can be affirmed under either standard.

## IV.    DISCUSSION

### A. *Batson* Standard

"The Equal Protection Clause guarantees the defendant that the State will not exclude

members of his race from the jury venire on account of race…." *Batson*, 476 U.S. at 86 (citing *Strauder v. West Virginia*, 100 U.S. 303, 305 (1880)). The prosecutor is also forbidden to exclude members of the defendant's race based on the "false assumption that members of his race as a group are not qualified to serve as jurors." *Batson*, 476 U.S. at 86 (citing *Norris v. Alabama*, 294 U.S. 587, 599 (1935)). When analyzing a *Batson* claim, a trial court must conduct a "three-step inquiry." *Rice v. Collins*, 546 U.S. 333, 338 (2006).

First "the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory strike on the basis of race." *Id*. (citing *Batson*, 476 U.S. at 96-97). Next, if a prima facie case has been established, the trial court must determine whether the prosecutor has successfully "present[ed] a race-neutral explanation for striking the juror in question." *Id*. (citing *Batson*, 476 U.S. at 97-98). At this second stage, the prosecutor's explanation need not be "persuasive, or even plausible." *Id*. (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam)). "So long as the reason is not inherently discriminatory, it suffices." *Id*. At the third stage of the *Batson* analysis, however, a trial court must consider the "persuasiveness of the [prosecutor's] justification," and the prosecutor's credibility, in order to "determine whether the defendant has carried his burden of proving purposeful discrimination." *Rice v. Collins*, 546 U.S. at 338-39 (first quoting *Purkett*, 514 U.S. at 768 (per curiam); then quoting *Batson*, 476 U.S. at 98). In reaching its determination, it "may rely on 'all relevant circumstances,'" *Miller-El v. Dretke*, 545 U.S. at 240-41, 261 (quoting *Batson*, 476 U.S. at 96-97), and "must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor," *Snyder v. Louisiana*, 552 U.S. 472 (2008).

When examining a trial court's determination during the third and final stage of its *Batson*

13

analysis "[o]n appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. at 477 (citing *Hernandez v. New York*, 500 U.S. 352, 369 (1991) (plurality opinion)). Further, when considering the credibility and demeanor of jurors and prosecutors, "in the absence of exceptional circumstances" the trial court should receive deference. *Snyder v. Louisiana*, 552 U.S. at 477 (quoting *Hernandez*, 500 U.S. 366 (plurality opinion)). This is, in part, because the prosecutor's "race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance." *Id.*

In the instant case, all parties agree that Petitioner successfully stated a prima facie case that juror 34 was struck on the basis of race. They also agree that the prosecutor's proffered excuse for this strike was race-neutral on its face. The issues remaining are whether the Washington Supreme Court identified and applied the correct *Batson* standard as required by 28 U.S.C. § 2554(d)(1), and whether it made a reasonable determination of the facts as required by 28 U.S.C. § 2554(d)(2).

**B.  The state court decision was not contrary to clearly established federal law.**

Petitioner argues that the state court required him to show that racism, as opposed to purposeful discrimination, was the reason for the peremptive strike of juror 34. In requiring this, he argues, it imposed a higher burden than that imposed by the Supreme Court's *Batson* standard. As support for his argument he points to the state court's opinion:

> The main problem is that *Batson*'s third step requires a finding of "purposeful discrimination," which trial courts may often interpret to require conscious discrimination. This is problematic because discrimination is often unconscious. A requirement of conscious discrimination is especially disconcerting because it seemingly requires judges to accuse attorneys of deceit and racism in order to sustain a *Batson* challenge. *See* Robin Charlow, *Tolerating Deception and Discrimination After* Batson, 50 Stan. L. Rev. 9, 11 (1997) (noting that one judge

14

"had the uncomfortable feeling that she had just rendered an official ruling that the attorney was lying to the court"). Imagine how difficult it must be for a judge to look a member of the bar in the eye and level an accusation of deceit or racism. [footnote omitted]

*Saintcalle,* 178 Wash. 2d at 53.

In analyzing Petitioner's challenge, the R&R first notes that the Supreme Court has not defined "purposeful discrimination" in this context, and so it cannot be contrary to clearly established federal law to state that the standard requires a showing of racism. (*See* ECF No. 31 at 14 (quoting ECF No. 23 at 16).) This is in keeping with Supreme Court precedent stating that "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Id.* at 101 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted)). Petitioner takes issue with this reasoning, arguing that a term used by the Supreme Court should be presumed to have its plain meaning, and the plain meaning of racism when compared to the plain meaning of purposeful discrimination clearly reveals that it would be "much more burdensome" for a defendant to prove racism. (ECF No. 32 at 15.)

The R&R also reasons that the Washington Supreme Court's statement about "deceit and racism" was meant to inform a larger discussion focusing on the treatment of conscious versus unconscious bias in the *Batson* context. The R&R points out that, although the state court examined this issue at length, it ultimately determined that the facts of Petitioner's case would not "compel a finding of purposeful discrimination," whether the "purposeful discrimination" required by *Batson* encompassed unconscious bias or not. (ECF No. 31 at 14 (citing *Saintcalle*, 178 Wash. 2d at 53 n.8).) The R&R also states that any discussion of a "crippling burden" potentially created by *Batson* was used in support of the state court's conclusion that *Batson* protections should be strengthened, rather than in application to the facts of Petitioner's case. Petitioner argues that this

15

conclusion is irrelevant, because the Washington Supreme Court identified the lower courts' "profound misunderstanding" of *Batson* (that it seems to require judges to accuse attorneys of deceit and racism) and, instead of dispelling it, embraced it. (ECF No. 32 at 6.)

The AEDPA does not require that state courts refrain from discussing misunderstandings of clearly established federal law or critiquing it. The "contrary to" clause states only that federal courts "may grant the writ [of habeas corpus] if the state court arrives at a conclusion opposite that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." 28 U.S.C. § 2254(d)(1). Petitioner offers no case with "materially indistinguishable facts" and so he must demonstrate that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law.

The Washington Supreme Court explored the context surrounding *Batson* in depth. It lamented that if trial courts interpret *Batson*'s standard of "purposeful discrimination" as requiring "conscious discrimination," that would be "disconcerting because [a requirement of conscious discrimination] seemingly requires judges to accuse attorneys of deceit and racism." *Saintcalle*, 178 Wash. 2d at 53. However, footnote 8 in the same paragraph made it clear that the Washington Supreme Court was not necessarily subscribing to this interpretation; it stated, "it could be argued (although none of the parties make this argument) that 'purposeful discrimination' already encompasses unconscious bias." *Id*. at 53 n.8. The state court opinion also proposed ideas for new requirements that could replace *Batson*. These discussions were of an academic nature, examining shortcomings of, possible interpretations of, and alternatives to *Batson*. They do not appear to be an identification of the principle that was to be applied.

Further, the *Batson* standard was not "unreasonably applied" to Petitioner's case. As stated

in the R&R:

> The [state] court correctly explained three elements of the "purposeful discrimination" analysis that have been articulated by the Supreme Court: comparative juror analysis, which "entails examining whether the proffered race-neutral explanation could apply just as well to a nonminority juror who was allowed to serve"; disparate questioning of minority jurors, which "can provide evidence of discriminatory purpose because it creates an appearance that an attorney is 'fishing' for race neutral reason to exercise a "strike"; and a proffer of pretextual reasons, which "gives rise to an inference of race discrimination, and a court's finding of discrimination against one juror is evidence of discrimination of against [sic] other jurors."

(ECF No. 31 at 10 (citing *Saintcalle*, 178 Wash. 2d at 43).)

After providing these factors, the state court proceeded to discuss the context surrounding *Batson* in depth, but ultimately returned to the existing framework in its application to the case at hand. *See Saintcalle*, 178 Wash. 2d at 43, 55-56. The state court weighed the factors on either side of the argument, and ultimately decided that "the trial court's finding that there was no purposeful discrimination was not clear error." *Saintcalle*, 178 Wash. 2d at 55. In applying this analysis (as opposed to a heightened standard requiring a showing of racism), the state court's application of *Batson* was not objectively unreasonable. At the very least, it is likely that "fairminded jurists could disagree" on whether the state court decided Petitioner's case correctly. *See generally Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (finding "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision").

## C. The state court decision was not based on an unreasonable determination of the facts.

Petitioner's second argument challenges the state court's factual finding that the peremptory challenge of juror 34 was not based on purposeful discrimination. He claims that the

17

state court both failed to address certain evidence that was before the trial court and analyzed the evidence incorrectly, pointing to a number of factors that he claims demonstrate a *Batson* violation. While the petition identifies this alleged error as an "unreasonable application of law" under § 2554(d)(1), (ECF No. 23 at 24), the R&R correctly identifies this argument as a challenge to the state court's factual finding, to be analyzed under § 2554(d)(2), (ECF No. 31 at 15).

A trial court's decision to credit the prosecutor's explanation "represents a finding of fact of the sort accorded great deference on appeal," *Hernandez v. New York*, 500 U.S. 352, 364 (1991) (plurality opinion), and its ruling "must be sustained unless it is clearly erroneous," *Snyder*, 552 U.S. at 477 (citing *Hernandez*, 500 U.S. at 369 (plurality opinion)). This high level of deference to the trial court rests on the notion that "determinations of credibility and demeanor lie 'peculiarly within a trial judge's province.'" *Snyder*, 552 U.S. at 477 (quotation marks omitted) (quoting *Hernandez*, 500 U.S. at 365 (plurality opinion)). "In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's firsthand observations of even greater importance." *Id.*

In determining whether a trial court's decision to believe a prosecutor's proffered race-neutral explanation meets this standard, an appellate court may analyze a number of factors, among them whether the explanation would apply equally to a white juror who was not struck, whether the explanation was highly speculative, the disparate questioning of non-white jurors, and any previous *Batson* violations. *E.g.*, *Snyder v. Louisiana*, 552 U.S. at 477 (citing *Hernandez*, 500 U.S. at 369 (plurality opinion)) (holding that the Louisiana Supreme Court's rejection of the petitioner's *Batson* claim was clearly erroneous where the prosecutor's explanation was highly speculative and applied equally to white jurors who were not struck); *Miller-El v. Dretke*, 545 U.S. 231 (2005) (holding that the state court's decision to credit the prosecutor's race-neutral

explanation was unreasonable and clearly erroneous where prosecutors engaged in disparate questioning of black jurors, provided black jury members with more graphic information regarding the death penalty, offered an explanation that "reek[ed] of afterthought," and worked in a district attorney's office that was known to exclude black venire members). The use of pretextual explanations also "gives rise to an inference of discriminatory intent." *Snyder*, 552 U.S. at 485 (citing *Miller-El v. Dretke*, 545 U.S. at 252). Petitioner highlights a number of these factors in his objections.

First, he argues that the prosecutor's race-neutral explanation for the strike of juror 34 was unduly speculative, which the Supreme Court identified as evidence of a *Batson* violation in *Snyder v. Louisiana*. 552 U.S. 472, 482 (2008) (finding the race-neutral reason, that a juror would be inclined to find the defendant guilty of a lesser verdict to minimize the number of student teaching hours he would miss, to be highly speculative because the trial was anticipated to be short, the juror had received permission from his dean to make up missed time, and, if what the juror wanted was a short trial, he might have agreed with a verdict of first degree murder if the other jurors favored it).

The R&R distinguishes *Snyder*, explaining that while the prosecutor's excuse in *Snyder* was "illogical [and] contradicted by the record," the Washington Supreme Court acted reasonably in believing that the prosecutor was concerned juror 34 would be lost due to the recent murder of her friend, the anticipated use of explicit photos of bodies and blood in the trial, and juror 34's statement that she "was not sure how she was going to respond." (ECF No. 31 at 18.) Petitioner contends that juror 34 was "unequivocal" in stating that she could serve as a juror, and that "nothing about the conversation that the prosecutor had with juror 34" could justify the prosecutor's concerns. (ECF No. 32 at 7.) However, as the R&R highlights, "rather than being

'unequivocal,' [juror 34] vacillated between asserting that she could be fair and expressing concern about her abilities given the recent murder of her friend." (ECF No. 31 at 16.)

The trial court judge observed the prosecutor and juror 34 throughout *voir dire* and heard the arguments of both the prosecution and the defense. The trial court's ability to make these "firsthand observations" is precisely the reason that its decision is owed deference. It was within the trial court judge's discretion to credit the prosecutor's race-neutral explanation.

Petitioner also argues that disparate questioning of juror 34, comparative juror analysis, and the prosecutor's attempt to strike the only other non-white juror in the venire provide evidence of purposeful discrimination against juror 34. Petitioner correctly identifies these factors as elements of a purposeful discrimination analysis, which must be considered together with "all of the circumstances that bear upon the issue of racial animosity." *See Snyder*, 552 U.S. at 478 (citing *Miller-El v. Dretke*, 545 U.S. at 239). However, Petitioner's arguments are insufficient to compel the conclusion that the use of a peremptory challenge on juror 34 was the result of purposeful discrimination.

In reviewing the trial court's judgement, the Washington Supreme Court was required to sustain the determination "unless it [wa]s clearly erroneous." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quoting *Snyder*, 552 U.S. at 477). It was also required to defer to the trial court on findings of credibility and demeanor. *See Snyder*, 552 U.S. at 477. Moreover, the AEDPA's "highly deferential standard for evaluating state-court rulings," *Felkner*, 562 U.S. at 598, requires this Court to give the benefit of the doubt to the state court's decision, *see Cullen v. Pinholster*, 563 U.S. at 181. Accordingly, the Court determines that the Washington Supreme Court reasonably deferred to the trial judge's factual finding, and denies the petition for writ of habeas corpus.

20

**D. Petitioner's request for an evidentiary hearing is denied.**

This Court adopts Magistrate Judge Theiler's recommendation that Petitioner's request that the Court hold an evidentiary hearing be denied. "An evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (citing *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994)). "If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (1933). In this case, the record that was before the state court does preclude relief, and Petitioner's request for an evidentiary hearing is therefore denied.

**E. The Court grants a Certificate of Appealability ("COA") because Petitioner's claims are debatable.**

The R&R recommends that a COA be granted to Petitioner. "Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA…." *Miller-El v. Cockrell*, 537 U.S. at 335-36. "A motion for a [COA] must first be considered by the district court. If the district court grants a COA, the Court shall state which issue or issues satisfy the standard set forth in 28 U.S.C. § 2253(c)(2)." Ninth Circuit Rule 22-1. Under 28 U.S.C. § 2253(c)(2), "the applicant [must have] made a substantial showing of the denial of a constitutional right." To meet this standard, "a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. at 336 (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, Petitioner has made a substantial showing that his Fourteenth Amendment rights were violated when the trial court judge allowed the state to strike the only African-American member of the venire. Further, he has shown that reasonable jurists could debate whether the state court based its decision on an unreasonable determination of the facts, and therefore whether the petition for habeas corpus should have been granted. Accordingly, this Court adopts Magistrate Judge Theiler's recommendation and grants Petitioner a COA.

## V. CONCLUSION

Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, nor that it was based on an objectively unreasonable determination of facts. Having reviewed the R&R, Petitioner's Objections to the R&R, Respondent's Response to Petitioner's Objections to the R&R, and all other material properly before the Court, it is hereby ordered that:

(1) The Court ADOPTS the R&R, (ECF No. 31), and DENIES Petitioner's petition for writ of habeas corpus, (ECF No. 23);

(2) The Court GRANTS a certificate of appealability; and

(3) The Clerk of the Court shall send copies of this Order to Petitioner and dismiss this action with prejudice.

**IT IS SO ORDERED.**

Dated this 16th day of January, 2018.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge